ANNA KAPPES

*v.*

THE RUTHERFORD PARK ASSOCIATION, MOSES EHRENREICH
and WALTER A. KIPP.

[Submitted March 17th, 1900.   Decided May 10th, 1900
Filed November 17th, 1900.]

1. H. purchased certain lots from an association, and gave back a mortgage. He afterwards conveyed two of the lots to E. The association foreclosed the mortgage, and E.'s lots were sold thereunder, and bought in by the association. After the foreclosure was begun, E. conveyed the two lots to complainant's grantor. The association at all times treated its sheriff's deed as a mere mortgage, never made any claim to the premises, and had been repaid the whole amount due it, after which the association conveyed the lots to W., without consideration, on the representation that he held an outstanding equitable interest against which the association's deed was a cloud.—*Held*, that complainant's title would be quieted as against W.'s claim based on the association's deed to him.

2. E. deeded to complainant's grantor, with full covenants of seizin against encumbrances and of warranty, and with no reservation of, or any undertaking on the part of complainant to pay, an outstanding purchase-money mortgage given by E.'s grantor. The mortgage was foreclosed, and the property bought in by the mortgagee. The mortgagee afterwards deeded to W. for the benefit of E., and W. deeded to K.— *Held*, that the covenants in E.'s deed to complainant's grantor operated to extinguish K.'s claim, and that complainant's title would be quieted against it.

3. Where complainant's grantor mortgaged property for purchase-money, and the property was sold, and bid in by the mortgagee, a recital in the sheriff's return to the writ of *fieri facias* that by virtue thereof he sold the lands "after having duly advertised the same," is not sufficient proof of due advertisement as to make good a title derived from a deed from the mortgagee, as against complainant, suing to quiet title, who purchased on the faith of a perfect title, assumed possession, and remained therein fifteen years.

4. The presumption that a sheriff's deed contained recitals of the proper advertising of property at foreclosure sale, and had attached thereto the affidavit authorized by *Gen. Stat. p. 2982* §§ *13, 14, 16*, providing that a sheriff's affidavit, annexed to his deed, that he had duly advertised the property, should be conclusive evidence thereof after seven years, which presumption is claimed to arise from an entry in the sheriff's book of

sales reciting that a deed was made, is equivalent to secondary evidence of the contents of the deed, and is not admissible as a substitute for evidence of proper advertising, in the absence of any evidence accounting for the absence of the deed.

5. H. purchased lots of E., and gave a purchase-money mortgage, which was foreclosed, and the property bid in by E. A sheriff's deed to E., which was never recorded, was only evidenced by an entry in the sheriff's book of sales showing the sale, an acknowledgment thereof apparently signed by E., the description of the property and amount of the purchase-price, and the recital that a deed had been mailed to one who was presumably E.'s agent. *Gen. Stat. p. 2982 §§ 13, 14, 16,* provide that a sheriff's affidavit, annexed to his deed, that he has duly advertised property sold on foreclosure, shall be evidence of such due advertisement.—*Held,* that a presumption did not arise from such entry that a sheriff's deed was made containing recitals of proper advertisement of the property and having attached thereto the sheriff's affidavit of due advertisement.

6. A purchaser at foreclosure sale, who does not record his deed, and fails, for twenty-two years, to make any claim under it, is guilty of such laches as will preclude his grantee from claiming title through such deed against a party purchasing the premises in good faith, without notice, actual or constructive, except such as would have been afforded by examination of the records of the court in which foreclosure took place, and who continues in possession for fifteen years.

On final hearing on pleadings and proofs.

*Mr. John A. Dennin,* for the complainant.

*Mr. Edward J. Luce,* for the defendant Kipp.

PITNEY, V. C.

The object of this bill is to quiet complainant's title to a piece of land situate on the corner of Stuyvesant avenue and Rutherford avenue, in the town of Rutherford, Bergen county. The plot is two hundred and ten feet front on Rutherford avenue, and about one hundred and ten feet on Stuyvesant avenue, and contains about forty-three hundredths of an acre of land.

The defendants the Rutherford Park Association and Moses Ehrenreich have not appeared. The defendant Kipp was not originally made a defendant because at the time the bill was filed he had no record or other title, but acquired such title as he relies upon after the filing of the bill, and applied to be made a defendant on such after-acquired title, and was admitted and answered setting it up.

Both parties claim through the association which was confessedly the owner of the property in the year 1869. Previous to that time the association had laid out into building lots a considerable tract of land, comprising that in question, which it owned in that neighborhood, which it numbered and put on the market. The premises here in question comprise two lots adjoining each other, as laid down by the association on a map, and are numbered one to twenty-eight.

The complainant claims title by the following chain:

*First.* A deed from the association to Philip C. Harmon, dated July 1st, 1869, in consideration of $4,333, conveying eighteen lots of land, including the plot in question.

*Second.* A deed from Harmon and wife to Moses Ehrenreich (defendant), dated May 9th, 1871, in consideration of $946.43, containing full covenants of seizin and warranty, for the same premises.

*Third.* A deed from Moses Ehrenreich to George Hild, dated August 26th, 1872, in consideration of $1,550, with like covenants, for the same premises.

*Fourth.* A mortgage from George Hild and wife to Peter Schneider, dated August 10th, 1873, to secure $18,000, covering the two lots in question and a large number of other parcels of land.

*Fifth.* Proceedings in foreclosure on that mortgage by the executor of Schneider, resulting in a decree, sale and deed of conveyance by the sheriff of Bergen county to Katie Kappes, the daughter of the complainant, dated March 4th, 1881, in consideration of $95.

*Sixth.* A deed dated March 29th, 1883, made by Katie Kull, formerly Katie Kappes, and her husband, to Anna Kappes, the complainant. It is fairly inferable from the evidence that the purchase was actually made by complainant's husband, and the title put by his direction in his daughter, who, upon her marriage, conveyed to complainant.

Under the last-mentioned conveyances the complainant's husband took possession by renting the premises for agricultural purposes, first to one Johnson, and second to one Kehoe, they paying as rent sufficient money to pay the taxes and assessments

on the premises. Complainant's husband died in 1884, after which complainant continued the same arrangement. Complainant appears to have paid the taxes, and has produced the vouchers therefor down to about the year 1895. In 1891 she contracted to sell the premises to a party who employed Messrs. Copeland & Luce, solicitors of Rutherford, and solicitors of defendant Kipp, to examine the title, and they declined to pass it on the ground that it was passed away from complainant by foreclosure of a consideration money mortgage which had been given by Harmon to the defendant association, and under which the premises had been purchased at sheriff's sale by the association, and that, in addition to that, defendant Ehrenreich, a former purchaser, held a mortgage against it unsatisfied of record.

Messrs. Copeland & Luce made up an abstract of the title showing these outstanding claims, which reached the hands of Mrs. Kappes. She is an illiterate German, and did nothing about the matter until the bill in this cause was filed on the 17th of May, 1898.

As before stated, her solicitor made parties to the suit the Rutherford Park Association and Moses Ehrenreich. Both of those were non-residents of New Jersey, and an order of publication was taken against them June 4th, 1898, returnable August 5th, which order was duly published.

The rights of the association and of Ehrenreich, hereafter to be stated, became vested in the defendant Kipp, as follows: On the 27th of June, 1898, after publication had commenced, Mr. Delos C. Culver, as president of the association, conveyed the premises in question to Henry Wolf. Moses Ehrenreich and wife, on August 11th, 1898, conveyed their right, title and interest in the premises to the defendant Kipp, who was a partner in (I infer the real estate) business with Mr. Copeland; and on the 2d of September, 1898, Wolf conveyed the interest which he acquired from the association to Kipp.

Kipp's title so acquired arises in this wise: Harmon, the original purchaser from the association, gave back a consideration money mortgage on all the lots—eighteen in number—bearing even date with the conveyance to him, to secure the sum of $2,700.

Subsequently, on July 20th, 1872, and some time after the conveyance by Harmon and wife of the two lots in question to Ehrenreich, the association filed a bill to foreclose that mortgage, which resulted in a decree and sale by the sheriff of all the lots to the association. But it is an admitted fact in the case that the association treated this conveyance as a mere mortgage, and that they were repaid the whole amount due them, and have never made any claim of title to the premises here in question. In fact, the decree in that cause shows that Ehrenreich, as purchaser of the two lots here in question, had an equity to have the other lots mentioned in the association's mortgage sold to pay the amount due it before his, Ehrenreich's, lots were sold; and such is the decree. It provides for the sale of the other lots mentioned in the mortgage to pay the amount due, and if those other lots did not produce enough for that purpose, then, and in that case only, the Ehrenreich lots should be sold; and the sheriff's deed shows that they were sold to pay a deficiency. In fact, the answer of Kipp sets up a release by the association to Ehrenreich, which has been lost, but no proof was offered at the hearing of the making or loss thereof. But the proof is full and satisfactory that the association had been paid the whole amount of its debt, and such payment was known to Mr. Copeland, and that he in person procured the deed from the association to Wolf by representing to Culver, the president, that he was familiar with the books and affairs of the association, and that it had been fully paid and had no interest in the premises in question, and that the deed to Wolf was asked for in order to protect the title of Wolf, the real equitable owner of the premises. Mr. Copeland and Mr. Culver were fully examined on this subject, and Mr. Culver says that he was led by Mr. Copeland to believe that an innocent party who was entitled to a deed from the association had not for some cause received the proper deed to which he was entitled to make his title perfect; and that he would not have executed a deed under any circumstances except under those conditions, had he known anything to the contrary. Nothing was paid to the association except the ordinary expense of making a deed.

These facts alone are sufficient to dispose of defendant's claim of title under the foreclosure of the first (association) mortgage.

But there is another answer, complete in itself, against defendant's right in that behalf. Ehrenreich's deed to Hild was for a full consideration, and contained covenants of seizin against encumbrances, and of warranty, with no reservation of, or any undertaking put upon Hild, the grantee, to pay, any part of the outstanding mortgage held by the association. This cast upon Ehrenreich the duty of protecting the purchaser Hild and his assigns against that first mortgage, and made it inequitable in him to acquire any title under it as against his grantee, Hild, or his assigns. Wolf took the title under the mortgage without payment of any consideration, and upon the express representation by Copeland that it was taken for the benefit of Ehrenreich as the equitable owner. Kipp took title from Ehrenreich with full notice of all the facts, and hence could not, as Ehrenreich's grantee, make any use as against Hild, or his grantee, of the title under that first mortgage. The result is that when Wolf conveyed to Kipp, the title so conveyed was at once destroyed and defeated as to complainant as Hild's grantee. It follows that defendant must rely alone on Ehrenreich's title arising under another head.

That title is as follows: Ehrenreich, as we have seen, conveyed to Hild on August 26th, 1872, the two lots in question, and the complainant claims through that conveyance; but Hild, on the same date, gave back a consideration money mortgage to Ehrenreich for $775, payable in two years, being one-half of the consideration money mentioned in the deed from Ehrenreich to Hild. That mortgage was prior to the mortgage given by Hild and wife to Schneider for $18,000 on the premises here in question, and other premises, under which the complainant claims. Such was the state of the record title at the time the bill in this case was filed.

The theory of the complainant was that the Hild-Ehrenreich mortgage was barred by the statute of limitations at the time she filed her bill, and that the title of the association was in some way extinguished.

It would appear from the evidence of Mr. Copeland that he must have learned some time before the bill was filed, probably

in his examination of other titles of land of the association, that the title of the association was satisfied by the payment of the amount of the decree.

If this were all of the case it would seem to me that the complainant's title would be fully established as against the defendant. No proof was offered that the mortgage to Ehrenreich had ever been acknowledged by complainant or those under whom she claims, or that any interest had been paid on it within twenty years; so that the presumption would be absolute that it had been paid, and was, besides, absolutely barred by the statute.

But the defendant Kipp proceeds further and offers in evidence proceedings in this court of a foreclosure of that mortgage (given by Hild to Ehrenreich as part consideration of the purchase-price of the premises on the conveyance from Ehrenreich to Hild), and which, as we have seen, was prior to the mortgage under which the complainant claims. The proceedings show that the bill to foreclose the Hild-Ehrenreich mortgage was filed by Ehrenreich in 1875; that the executor of Schneider, who held the mortgage under which complainant claims, was made a party, and that a decree was duly entered in favor of the complainant; that the executor of Schneider did not appear, and so far as appears was not summoned to appear before the master who computed the amount due and stated the priorities; the order of priorities between the complainant's mortgage and the Schneider mortgage was not passed upon, but an ordinary decree of foreclosure was made against all the defendants. The writ of *fieri facias* was sent to the sheriff (Hering) of Bergen, who returned it with a statement that he had sold the premises to Moses Ehrenreich for the sum of $200, and that he had paid to G. E. P. Howard, solicitor of the complainant, the sum of $158.37, which, with the sheriff's execution fees, amounted to just the sum of $200.

The defendant further claims that a conveyance was made by the sheriff by virtue of that sale to Ehrenreich. Such conveyance was never recorded, and was not produced. Mr. Ehrenreich was not called to prove that he had ever received it, or had it in his possession, and its absence was not accounted for. But reli-

ance in support of the allegation of its existence is placed upon an entry in the sales-book of Sheriff Hering, in the handwriting of his clerk, who, as well as the sheriff, is dead. The entry contains the conditions of sale, then an acknowledgment signed "Moses Ehrenreich, New York City,". that he had purchased the premises for the sum of $200. No proof of the genuineness of that signature was given. Then there is a description of the property, then a statement of the amount of the decree, with interest. Then is found this memorandum opposite the list of sheriff's execution fees: "Deed mailed to Leicester P. Holme, August 21st, 1876; fees paid." What connection Mr. Holme had with Mr. Ehrenreich does not appear. It is fairly inferable, however, that he was an agent of Ehrenreich, who attended on his behalf, bid in the property, paid the amount so bid, and directed the deed to be sent to him and that it was so done. If so, we may fairly presume that the document reached the hands of· Ehrenreich.

It appears by the evidence of the complainant that during all the time that she or her daughter held the title and was having possession of these premises, and paying the taxes and assessments on them, no claim was made thereto by Mr. Ehrenreich, or, indeed, at any time until claim was made herein by the defendant Kipp.

The question is, whether this Ehrenreich title is superior to that of the complainant, who is, and has been for so many years, in possession.

The complainant's title is one that commends itself to the court. She, or her husband, purchased these premises at sheriff's sale under foreclosure, in 1881, and had the title conveyed to her daughter, who subsequently conveyed to the complainant. Ninety-five dollars in cash were undoubtedly paid for the premises. The complainant and, presumably, her husband, were illiterate Germans, and it is fair to suppose purchased the premises believing that at a sale under foreclosure the title would be perfect. Such is the common belief and understanding among unlearned people. The great majority of the foreclosures in this state are either under the first mortgage, or bring in the first mortgagees as parties defendant, so that the title is usually clear.

They acted in perfectly good faith in taking possession and fencing in the lot. We may fairly infer from the circumstances that it, in common with the other lots of the tract, laid out to commons until a fence was put up. This was an exercise of ownership which challenged all persons having any claims against it to present them. The complainant is guilty of no laches. On the other hand, Ehrenreich has shown entire want of any diligence to assert his claim.' As has already been observed, there is no evidence to show that he ever asserted any claim to the property, and when he conveyed to Kipp was careful to have inserted by way of interlineation in the deed, which is on an ordinary blank, the words "the right, title and interest of the parties of the first part in;" and while the deed is one of grant, even the simple covenant against his own acts is erased, and it contains no covenant whatever.

Mr. Copeland denies that he had heard of the complainant's bill being filed at the time he applied to Mr. Culver for the title of the association, or when he procured Mr. Ehrenreich's title; but the remarkable circumstance in the case is that the order of publication was taken on the 4th of June, 1898, and the application was made to Mr. Culver for the title of the association some time before the 27th of June, on which day the deed was executed, and that he was told by Copeland that it was in aid of the equitable title; and yet the deed was made to Wolf, who, as yet, had no interest in the premises; and the title from Ehrenreich, who was, according to the defendant's theory, the owner of the equitable title, was not procured until the 11th of August. That deed states a consideration of $250. No proof was offered as to what, if anything, was actually paid for it.

It is plain that Mr. Copeland, who had complete knowledge of the claim of the complainant, was the active spirit in procuring the title to his partner in business, Mr. Kipp, from the association and from Ehrenreich, and it is fair to infer that he first procured that of the association, to be vested in Wolf, so that he could be in a better position to deal with Ehrenreich for his interest.

These facts show that the title of the defendant is not one which appeals with much strength to a chancellor.

But let us look at it a little closer.  As we have seen, the bare legal title outstanding in the association amounts to nothing. The defendant acquired no right in equity against the complainant under that deed.  Then the question is whether or not the Ehrenreich title, supposed to be derived under the foreclosure of the (second) mortgage from Hild to him, has any validity, and, if so, whether it has lost its strength by lapse of time.  The complainant's theory is that she bought the legal title, subject to the mortgage held by Ehrenreich, as an unforeclosed mortgage, and that she is entitled in law, notwithstanding the foreclosure proceedings under that mortgage, to set up against it the bar of the statute of limitations, for the following reasons—*first,* that there is no proof before the court that the sheriff's sale was properly advertised.

Proof of proper advertisement cannot be dispensed with.  The sheriff was acting as a mere public agent, and the rule is unbending that, with certain well-known exceptions, of which the present is not one, the deed of conveyance of such an officer is void unless all the necessary prerequisites have been complied with; among these is one that the property should be advertised in a particular manner, and that the sale should be had at a particular time in the day.  *Woodbridge* v. *State, Allen, pros., 14 Vr. 262,* in the court of errors.

Prior to the passage of the act of March 25th, 1864 (*P. L. of 1864 p. 498; Gen. Stat. p. 2982 §§ 13, 14, 16*), it was necessary in all cases, in proving title under a sheriff's sale, to make proof in detail of the required advertisements, unless the sheriff's deed itself recited the particulars of such advertisement.  A mere recital by the officer that he had advertised the property "according to law" was not sufficient.  The law on this subject was accurately stated by Mr. Justice Depue (adding what is clearly understood) in the case just cited (at *p. 271*), as follows: "The recital in a sheriff's deed, stating the manner in which the advertisement of the sale was made, is *prima facie* evidence that he has duly advertised the sale [in the manner so recited]; but a recital that he advertised or made sale 'according to law,' or 'pursuant to statute,' has never been considered as showing compliance with the statute."

The distinction is between a recital stating in detail the manner of the advertisement, and one stating only that he "advertised according to law." The latter recital is of no value as proof of advertisement.

The practice of the sheriffs of late days is, in all cases, to recite in the deed the manner in which they have advertised, namely, that they set up notices of the sale in five public places, one of which was in the township where the land was situate, and advertised the same in a certain newspaper for four weeks next before the time of sale, &c., and that the sale took place at the time mentioned, which was after twelve o'clock in the day. These recitals in the deed, when that is produced, have been held, without statutory aid, to be *prima facie* proof, but *prima facie* only; and such is the character of the recitals referred to by Mr. Justice Depue in the paragraph above cited.

By the act of 1864 provision was, for the first time, made for the sheriff or other officer to make an affidavit, annexed to his deed, that he had duly advertised the premises for sale, and the conveyance, when duly proven and acknowledged according to the statute, became evidence of a good and valid sale; and by the second section of the act just cited the production of the deed, duly proven, is *prima facie* evidence of the truth of the recitals contained in it; and by the third section of the act it was provided that, after seven years, it became conclusive evidence.

But this act, or any other, does not dispense with the necessity of proof in some legal manner of an advertisement in compliance with the terms of the first section of the act concerning the sale of land. It was even held in *Den* v. *Mulford, 1 Zab. 500,* that possession for any period of time less than twenty years under a sheriff's deed, without proof by recitals or otherwise showing performance of all the necessary prerequisites to a sale, was insufficient to cure the defect.

The only proof of advertisement in this case is found in the return of the sheriff annexed to the writ of *fieri facias,* and that is this:

"By virtue of the within writ issued and directed in the above-stated cause, I did, on the 17th day of May, 1876, *after having duly advertised* the same lands and premises, sell at public vendue, at the court house in the village of Hackensack," &c.

This return merely says "after having duly advertised the same." Such a recital or certificate, as we have seen, is insufficient, even if it had been inserted in the deed and the deed had been produced.

But it is urged by the defendant that the entries made in the sheriff's sales-book by his clerk were so made in the due course of his official business, and are sufficient to prove that such a deed was actually made and delivered, and such making and delivery being established, a presumption arises that it contained the usual recitals, and had annexed to it the affidavit required by the act of 1864. But this presumption, assuming for the moment that it is one upon which the court can properly rely, amounts, after all, to no more than proving by inference the contents of a writing. This, according to perfectly familiar principles, can only be done after accounting for the absence of that writing. Here the deed in question which is sought to be established is naturally in the possession of the defendant who claims under it, and nothing can be plainer than that he cannot prove its contents without accounting for its absence. This has not been done. For all that appears it may be in the possession of Ehrenreich undestroyed. No evidence is given of any attempt to find it, nor to lay any other foundation for resorting to secondary evidence of its contents. The absence of this proof is fatal to the defendant's position. If we had here in evidence by a competent witness full, direct and satisfactory proof of the contents of the deed and the accompanying affidavit, by an examined copy, it would be unlawful to use it without first accounting for the absence of the original.

But I do not wish to be understood as assenting to the proposition that, if the absence of the deed itself was satisfactorily accounted for, this court could, under the circumstances of this case, hold that its contents in the particulars here in question— namely, recital of the advertisements, or the making of the affidavit by the sheriff—could be presumed from the entries in the sheriff's sales-book. The maxim *omnia rite acla præsumuntur* does not, I fear, reach far enough for that purpose. I can find no case to warrant its use to raise a presumption that an official document contains certain recitals for the purpose of proving the truth of the facts stated in those recitals, especially where,

Kappes *v.* Rutherford Park Association.

as here, the party claiming by virtue of the facts so recited has not been in possession or exercised rights upon the strength of those facts. The maxim in question finds its beneficial service in sustaining titles under long-continued possession, and has little application to cases like that of the defendant.

It is to be observed that the defendant did not produce to the court any sample of the deeds Sheriff Hering was in the habit of using.

This seems conclusive against the defendant.

*Second.* The complainant contends that the deed not having been recorded or any possession taken under it, the mere proof that a sale was had by the sheriff does not bind the complainant, who purchased at public sale after the date of the transaction, and without any notice of it, actual or constructive.

Against this the defendant sets up that the complainant is charged with notice of the foreclosure proceedings, arguing that the general doctrine of *pendente lite nihil innovetur* applies because an action of foreclosure is expressly excepted from the fifty-seventh section of the Chancery Practice act.

It is true that if the complainant, before purchasing at the sheriff's sale under the Schneider mortgage, had examined the records of this court to see whether or not any decree had been entered against Hild upon the mortgage given by him to Ehrenreich, she would have found the decree in this case. But that does not seem to me to be conclusive on this part of the case. It seems to me that the controlling fact is that Ehrenreich, after receiving his deed, if he ever did receive it, failed to record it or to make any claim under it for a period of twenty-two years before the complainant filed her bill, which was on the 17th of May, 1898. That in the meantime the complainant had bought the premises at sale under the foreclosure of a subsequent mortgage it is true, but still without any notice of Ehrenreich's title, except what might have been derived by an examination of the records of this court, and took possession under her conveyance, and continued such possession for a period of over fifteen years. Under these circumstances it seems to me that Ehrenreich is barred by his own laches.

I will advise a decree declaring in favor of the complainant's title.